# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WESLEY J. FISHER,                                       :
                                                        :
          Petitioner,              :
                                                        :
  v.                                              :     Civ. Act. No. 16-838-LPS
                                                        :
CLAIRE DEMATTEIS, Commissioner,                         :
Delaware Department of Corrections,                     :
SHANE TROXLER, Bureau Chief, and                        :
ATTORNEY GENERAL OF THE STATE OF                        :
DELAWARE,                                               :
                                                        :
          Respondents.[1]          :

---

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Kathryn J. Harrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION

September 30, 2019
Wilmington, Delaware

---

[1] Commissioner Claire DeMatteis and Bureau Chief Shane Troxler have replaced former Commissioner Robert M. Coupe and former Bureau Chief Alan Grinstead, original parties to the case. *See* Fed. R. Civ. P. 11(d).

**STARK, U.S. District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Wesley J. Fisher ("Petitioner"). (D.I. 2) The State filed an Answer in opposition (D.I. 9), to which Petitioner filed a Reply (D.I. 13). For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## I. BACKGROUND

On March 5, 2012, Petitioner pled guilty to two counts of drug dealing (marijuana). (D.I. 9 at 1) On that same day, the Superior Court sentenced Petitioner to a total of sixteen years of Level V incarceration, suspended after eight years and thirty days for eighteen months of Level III probation. (D.I. 9 at 1-2) Petitioner did not file a direct appeal.

On April 20, 2012, Petitioner filed a motion for modification of sentence, which the Superior Court denied on June 12, 2012. Petitioner filed a second motion for modification of sentence on August 16, 2013, which the Superior Court denied on September 24, 2013. (D.I. 9 at 2)

On July 14, 2014, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). On January 16, 2015, Delaware's Office of Defense Services ("OPD") filed a second Rule 61 motion on Petitioner's behalf, instructing the Superior Court to disregard Petitioner's *pro se* Rule 61 motion. The Superior Court summarily dismissed the Rule 61 motion on April 20, 2015. (D.I. 9 at 2; *see State v. Anderson* 2015 WL 2067158 (Del. Super. Ct. Apr. 20, 2015)). The Superior Court denied Petitioner's motion for reargument on June 17, 2015. *See State v. Banks*, 2015 WL 4400130 (Del. Super. Ct. June 17, 2015). The Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's Rule 61 motion on December 9, 2015. *See Banks v. State*, 2015 WL 8481972 (Del. Dec. 9, 2015).

On September 21, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf asserting that Petitioner's lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 2) Petitioner also argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the Petition should be dismissed as time-barred or, alternatively, because the claim is meritless. (D.I. 9) Petitioner filed a Reply, conceding that the Petition was filed after the expiration of the statute of limitations period but asserting that it should be deemed timely filed through the application of the doctrine of equitable tolling. (D.I. 13 at 7)

## A. OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.

> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.

> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

2

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-

year period of limitations for the filing of habeas petitions by state prisoners, which begins to run

from the latest of:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such
> State action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See*

*Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory

tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period

contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The State contends that

the starting date for the limitations period is April 4, 2012, the date on which Petitioner's conviction

became final. (D.I. 9 at 6) Petitioner, however, appears to assert that he is entitled to a later starting

date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the

date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 13 at 7)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that there was ongoing misconduct at the OCME during the time he was considering whether to enter a plea. Second, he contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970), due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that his lack of knowledge about the OCME misconduct is vital to his habeas Claim because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[2] *See United States v. Bagley*,

---

[2] A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and whether the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* Claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014. For the following reasons, the Court concludes that Petitioner has met this burden.

First, the State provided Petitioner the OCME report concerning the drug evidence in his case on January 20, 2012, and he pled guilty March 5, 2012. (D.I. 9 at 3) Second, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense counsel until April 15, 2014 when, as part of its *Brady v. Maryland* obligation, the State informed Petitioner and other defendants that all drug evidence housed at the lab was susceptible to compromise.[3] (D.I 13 at 7)

---

[3]Although the Delaware State Police ("DSP") began its investigation into compromised drug evidence on January 15, 2014, and the Deputy Attorney General's office informed defense counsel on February 21, 2014 that an investigation into the evidentiary practices at the OCME had started on February 20, 2014, the Court concurs with Petitioner's contention that sufficient facts to make the instant argument were not available until the State provided the relevant information on April 15, 2015. *See Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), https://news.delaware.gov/2014/06/19/biden-investigation-of-state-medical-examiners-drug-lab-reveals-systemic-failings-urgent-need-for-reform/.

Given these circumstances, the Court concludes that AEDPA's limitations period in this case began to run on April 15, 2014.[4] Accordingly, to comply with the one-year limitations period, Petitioner had to file his § 2254 petition by April 15, 2015. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n.3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary of triggering event).

Petitioner did not file the instant § 2254 Petition until September 21, 2016, approximately one year and five months after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the

---

[4]The State relies on *Harmon v. Johnson*, 2016 WL 183899, at *3 (D. Del. Jan. 14, 2016), to support its argument that § 2254(d)(1)(D) is inapplicable and, therefore, cannot trigger a later starting date in Petitioner's case. The Court disagrees. Harmon argued that his conviction should be vacated because the State violated *Brady v. Maryland* by failing to disclose its knowledge of the OCME drug evidence scandal during his plea process and by waiting until long after his conviction in 2012 to disclose the tampering. *See Harmon*, 2016 WL 183899, at *2-3. However, since the drug evidence in *Harmon* was never sent to the OCME for testing, the court found that the revelation of the OCME scandal in 2014 could not have constituted a new factual predicate for Harmon's substantive *Brady v. Maryland* claim. *Id.* Here, by contrast, Petitioner argues that the alleged lack of knowledge of the OCME misconduct was material to his decision to plead guilty, thereby rendering his guilty plea involuntary under *Brady v. United States*. In addition, unlike in *Harmon*, the drug evidence in Petitioner's case was sent to the OCME for further testing after the initial field test, and Petitioner received a copy of the OCME report prior to pleading guilty. Given these circumstances, which are quite different than those presented in *Harmon*, the Court concludes that the revelation of the OCME scandal constitutes a new factual predicate.

6

limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, when the OPD filed Petitioner's second Rule 61 motion on January 16, 2015, 276 days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from January 17, 2015 through December 9, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. The limitations clock started to run again on December 10, 2015, and ran the remaining eighty-nine days without interruption until AEDPA's limitations period expired on March 8, 2016. Thus, even with the applicable statutory tolling, the Petition is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

Pursuant to the equitable tolling doctrine, the one-year limitations period may be tolled in very rare circumstances for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Jones,* 195 F.3d at 159; *Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Here, Petitioner contends that equitable tolling is warranted because "he pursued he rights diligently" and

> [i]t would be inequitable to prevent him from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as he did, filed their petitions at the same time or after he did and exhausted their state remedies around the same time as he did. It is unfair to penalize him because his counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct.

(D.I. 13 at 8) Petitioner also states that

> [a]dditional extraordinary circumstances resulted from the systemic nature of the government misconduct. Counsel had to: 1) identify which of a vast number of clients had viable claims; 2) contact all of those clients; 3) file a vast number of petitions for those with legitimate claims; 4) operate with limited state resources strained by the volume of filings; 5) stop filing petitions in order to research and brief issues raised due to the Superior Court's abrupt and drastic amendment to Rule 61 without notice to counsel; 6) prepare for, participate in and submit briefing following a 3-day evidentiary hearing in *State v. Irwin* to uncover further evidence of OCME misconduct; and 7) repeatedly supplement filed motions with new evidence of misconduct that continued to trickle out over the next two or more years.

(D.I. 15 at 8-9)

Petitioner's equitable tolling argument is unavailing. His assertions regarding strained state resources, number of post-conviction cases, *etc*, do not constitute extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson,* 62 F. Supp. 3d 406, 411 (D. Del. 2014) ("attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes). Even if these "events" could somehow be construed

8

as extraordinary, Petitioner has not demonstrated that they actually prevented him from filing a basic habeas petition. *See Ross v. Varano*, 712 F.3d 784, 803 (3rd Cir. 2013) ("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). For instance, he raised the issue of the OCME drug evidence scandal in his Rule 61 motion that he filed in the Delaware Superior Court on January 16, 2015, and the Delaware Supreme Court affirmed the denial of the Rule 61 motion on December 9, 2015. These dates demonstrate that Petitioner could have filed a timely "protective" § 2254 petition[5] in this Court, along with a motion to stay the proceeding while awaiting the Delaware state courts' post-conviction decisions, in the remaining eighty-nine days remaining in the AEDPA's limitations period following the Delaware Supreme Court's post-conviction decision. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (once extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing his petition).

In short, Petitioner cannot demonstrate that the OCME scandal, and/or the timing of the State's disclosure about the OCME scandal, actually prevented him from timely filing a petition seeking federal habeas relief. For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts presented. Accordingly, the Court will deny the instant Petition as time-barred.[6]

---

[5]The Supreme Court has explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

[6]Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

## III.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV.    CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.